IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARIO ARCE, # M-24846,**

      **Plaintiff,**

      vs.                                                 Case No. 18-cv-1348-MJR

**WEXFORD HEALTH SERVICES,**
**TIMOTHY ADESANYAPA,**
**BLUM, and**
**DR. BUTALID,**

      **Defendants.**

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

    Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have failed to treat his leg injury, causing potentially life threatening blood clots. He also claims Defendants are not appropriately treating his blood clots and associated symptoms and have disregarded recommendations from outside physicians. Plaintiff seeks monetary damages. Plaintiff's Complaint includes a section wherein he requests issuance of a temporary restraining order ("TRO") and preliminary injunction. (Doc. 1, pp. 21-24).

    This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

On June 18, 2017, Plaintiff was injured while playing soccer. (Doc. 1, p. 7). The injury caused severe pain in Plaintiff's thigh, he was unable to bend his legs and toes, and he could not put weight on his leg. *Id.* Initially, Plaintiff was examined by Dr. Butalid. *Id.* Plaintiff was then

2

taken to Pinckneyville Hospital. The physician at the hospital ordered an x-ray and, after observing Plaintiff's severe swelling and other symptoms, recommended that Plaintiff be examined by a specialist in Saint Louis, who could perform a "strike test." *Id.*

Plaintiff was subsequently examined by a specialist. *Id.* The specialist performed a strike test, concluded Plaintiff was suffering from Compartment Syndrome, and recommended surgery. *Id.* The specialist indicated Plaintiff should return for surgery in two days. *Id.* Plaintiff returned to Pinckneyville on June 19, 2017. (Doc. 1, p. 8). According to Plaintiff, at that time, unspecified officials gave him crutches and an "insufficient" amount of Motrin. *Id.*

On June 28, 2017, Plaintiff was examined by Nurse Blum. *Id.* Plaintiff showed her his leg, which was bruised from the upper thigh to the ankle, and was extremely swollen and painful. *Id.* He also inquired about the specialist's recommended treatment (surgery). *Id.* Nurse Blum responded stating, "It's not going to be quick. Corporate has to approve the follow-up." *Id.* Plaintiff requested physical therapy and pain medication. *Id.* Nurse Blum said she was only allowed to give Plaintiff generic Motrin, which she did, but it did not help Plaintiff's pain. *Id.*

On June 30, 2017, Plaintiff submitted a grievance. (Doc. 1, pp. 8, 27-28). Plaintiff inquired about having a follow-up appointment with the specialist and complained that his pain and other symptoms were getting worse. *Id.*

Subsequently, collegial denied Plaintiff's request for surgery, in contravention of the specialist's recommendation. (Doc. 1, p. 9). Instead, collegial referred Plaintiff for a "standard" ultrasound, which was scheduled for July 7, 2018. The ultrasound revealed a blood clot in Plaintiff's thigh. *Id.* Plaintiff was prescribed blood thinners (Lovenox and Coumadin). *Id.* Plaintiff complained to Dr. Butalid about his severe pain and indicated he "couldn't function his leg," but Dr. Butalid did not provide Plaintiff with any pain medication. *Id.*

On July 12, 2017, Plaintiff was released from the infirmary and returned to general population. *Id.* Plaintiff was prescribed more blood thinners, but the blood thinners "did not alleviate the swelling, or pain, or aid in [his] mobility." *Id.* According to Plaintiff, "Dr. Butalid knew this as well." *Id.*

On August 4, 2017, Plaintiff submitted another grievance about prison officials' failure to comply with the specialist's recommendations. (Doc. 1, p. 10). He claimed the lack of compliance worsened his condition and caused his blood clot. *Id.* Plaintiff did not receive a response to this grievance. *Id.*

On August 30, 2017, Plaintiff was examined by Nurse Blum. *Id.* Plaintiff complained that his repeated requests for pain medication and treatment to alleviate the swelling were being ignored. *Id.* She responded stating, "You're not going to get high grade medicine here. It's not Saint Louis, it's Pinckneyville. So they have to follow corporate." *Id.* Blum then prescribed a few days' worth of Ultram. *Id.* However, it was an insufficient amount to treat his pain. *Id.*

On September 25, 2017, during a physical therapy session, the physical therapist observed Plaintiff's swelling, bruising, and worsening symptoms. *Id.* He recommended Plaintiff have another ultrasound to check for additional blood clots. *Id.*

On September 28, 2017, after receiving "no response from Admin, the doctor, or the LPN's," Plaintiff submitted another grievance. (Doc. 1, p. 11). Plaintiff requested treatment with a specialist, "due to the obvious failure of current medications." *Id.* He did not receive a response. *Id.*

On November 15, 2017, Plaintiff submitted another grievance "pleading for treatment because of worsening pain, new blood clots, and difficulty moving." *Id.* Plaintiff did not receive a response. *Id.*

4

On November 31, 2017, Plaintiff's physical therapist observed worsening symptoms and recommended neuropathy medication. *Id.*

On November 25, 2017, Plaintiff was examined by Nurse Adesanyapa. *Id.* Plaintiff relayed the physical therapist's recommendations. *Id.* Nurse Adesanyapa responded stating, "You're never going to get that. Don't even bother trying. You're going to have to deal with it [the pain and swelling]." *Id.* He then offered Plaintiff Tylenol and said, "take it or leave it." *Id.*

On November 27, 2017, Plaintiff was transferred to the emergency room at Pinckneyville Hospital. (Doc. 1, p. 12). Plaintiff had severe swelling in his leg, severe pain, and could not walk. *Id.* Hospital officials did not know what was causing Plaintiff's symptoms and indicated Plaintiff needed to be seen by a specialist. *Id.*

Thereafter, Plaintiff was returned to Pinckneyville, where he allegedly received inadequate treatment and continued to experience pain and difficulty walking. *Id.*

On March 11, 2018, after repeated complaints, Plaintiff was examined by Nurse Blum. *Id.* Plaintiff told Nurse Blum that his pain was worsening, that the Ultram she previously prescribed only lasted a few days and barely treated his pain, and that the blood thinners were not helping. *Id.* She responded stating, "You're lucky to be getting anything." *Id.* She then ended the visit. *Id.* Plaintiff saw Nurse Blum again on March 17, 2018. *Id.* She prescribed more blood thinners, though in a lower dosage than previously prescribed, and a few days' worth of Ultram. *Id.*

Later in March, Plaintiff finally received another ultrasound (which had been recommended by the physical therapist on September 25, 2017). (Doc. 1, p. 13). The ultrasound revealed that the blood clot had not resolved and that the blood thinners were not working. *Id.* Dr. Butalid then prescribed a neuropathy medication, which helped with Plaintiff's pain. *Id.*

On March 29, 2018, Plaintiff submitted another grievance pertaining to his condition and seeking treatment. *Id.* At or about that time, Dr. Butalid "cut off" Plaintiff's neuropathy medication, and the pain returned. *Id.* Plaintiff complained, but Dr. Butalid did not renew his neuropathy medication for nearly two weeks. *Id.*

According to Plaintiff, as of the filing of the instant Complaint, he "continues to suffer." Plaintiff seeks monetary damages and requests a TRO and/or Preliminary Injunction. (Doc. 1, pp. 21-24). Plaintiff states that he is continuing to suffer from "potentially fatal blood clots" and requests an injunction "to get the care he needs." (Doc. 1, p. 22-23).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Blum, Adesanyapa, Butalid, and Wexford responded with deliberate indifference to Plaintiff's serious medical condition, in violation of the Eighth Amendment.
>
> **Count 2:** Blum, Adesanyapa, Butalid, and Wexford committed medical malpractice/negligence, under Illinois law, in treating Plaintiff's serious medical condition.

## Count 1

In order to state an Eighth Amendment deliberate indifference claim, an inmate must allege that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to his medical need, which is a subjective standard. *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994). Plaintiff's initial leg injury, subsequent blood clot or clots, as well as his associated pain, swelling, and lack of mobility constitute an objectively serious medical need. Plaintiff has also alleged that the individual medical defendants (Blum, Adesanyapa, and Butalid) responded with deliberate indifference to that condition by failing to treat his pain, delaying treatment, pursuing a course of treatment known to be ineffective and/or for non-medical reasons, and for disregarding recommendations from an outside specialist. *See* e.g., *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015); *Brown v. Darnold*, 505 F. App'x. 584 (7th Cir. 2013); *Gomez v. Randle*, 680 F.3d 859 (7th Cir. 2012); *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005). The Complaint also alleges that Wexford has a policy of denying inmates' necessary medical care in order to reduce costs and that allegedly unconstitutional decisions pertaining to his care were influenced by this policy. (Doc. 1, p. 19). This is sufficient to allow count 1 to proceed as to Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

Accordingly, Count 1 shall receive further review as to Blum, Adesanyapa, Butalid, and Wexford.

**Count 2**

Plaintiff also brings state a state law claim for medical malpractice. Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such

7

a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a). A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the claim in Count 2 shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of Count 2 may become a dismissal with prejudice.

**Pending Motions**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be

addressed in a separate order.

Plaintiff's Complaint also includes approximately two pages devoted to requesting a TRO and/or preliminary injunction, which the Court construes as a motion for the same. (Doc. 1, pp. 21-30). Insofar as this motion seeks a temporary restraining order (TRO), it is **DENIED IN PART**. However, that portion of the motion which seeks a preliminary injunction is **REFERRED** to a United States Magistrate Judge for further consideration.

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). In the prison context, the orders are typically employed "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Without expressing any opinion on the ultimate merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. Although Plaintiff's allegations suggest a serious medical condition, it appears he is currently receiving some treatment for that condition (blood thinners, neuropathy medication, and physical therapy). Additionally, if the Court determines that Plaintiff is entitled to injunctive relief, the input of all parties concerned will greatly assist in fashioning a remedy that is narrowly tailored to mitigate future harm to Plaintiff.

9

As noted above, the Court's threshold review dictates that Plaintiff's request for preliminary injunctive relief deserves prompt consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for a preliminary injunction is hereby **REFERRED** to United States Magistrate Judge Stephen C. Williams, who shall resolve the request as soon as practicable and issue a Report and Recommendation.

The Motion for Recruitment of Counsel (Doc. 3) is also referred to United States Magistrate Judge Williams for further consideration.

The Motion for Service of Process at Government Expense (Doc. 4) is **GRANTED**.

### Injunctive Relief

With respect to Plaintiff's request for injunctive relief, the warden is the appropriate party. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, the Court **DIRECTS** the Clerk of the Court to add Scott Thompson, Pinckneyville's Acting Warden, as a defendant, in his official capacity only, for the purpose of carrying out any injunctive relief that is ordered.

### Disposition

The Clerk is **DIRECTED** to **ADD** a Motion for Preliminary Injunction as a separate docket entry in CM/ECF. This motion is hereby **REFERRED** to United States Magistrate Judge Stephen C. Williams for prompt disposition.

The Clerk is **DIRECTED** to add **SCOTT THOMPSON**, the Acting Warden of Pinckneyville, in his official capacity, for purposes of carrying out any injunctive relief that is ordered.

**IT IS FURTHER ORDERED** that **COUNT 1** will proceed as to **WEXFORD, ADESANYAPA, BLUM,** and **BUTALID**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim(s) in **COUNT 2**, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before August 9, 2018). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 2** may become a dismissal with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall take appropriate steps in coordination with the U.S. Marshals Service, to effect formal, **PERSONAL SERVICE** of summons, the Complaint (Doc. 1), which includes the motion for preliminary injunction (Doc. 1, pp. 21-23), and this order upon each Defendant at his or her work address, as provided by Plaintiff. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's Motion for a Preliminary Injunction.

The United States Marshals Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure 4(e) to effect service. The Clerk is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **WEXFORD, ADESANYAPA, BLUM, BUTALID** and **THOMPSON** (official capacity only)**.** The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the Complaint (Doc. 1),

and this Memorandum and Order. The Clerk shall deliver the service packets for each Defendant to the United States Marshals Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL PERSONALLY SERVE** upon Defendants **WEXFORD, ADESANYAPA, BLUM, BUTALID** and **THOMPSON** (official capacity only)**,** the service packets containing the summons, form USM-285, a copy of the Complaint (Doc. 1), the Motion for Preliminary Injunction (Doc. 5), and this Memorandum and Order. **LEAVING THE SUMMONS WITH THE PRISON'S LITIGATION COORDINATOR IS NOT SUFFICIENT – each Defendant must be personally served**. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In order to assist the Court in its resolution of the motion for preliminary injunctive relief, Defendants **WEXFORD, ADESANYAPA, BLUM, BUTALID** and **THOMPSON** (official capacity only) **SHALL FILE A RESPONSE** to the motion within 14 days of the date of service of the summons.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings, including Plaintiff's Motion for Recruitment of Counsel and Motion for Preliminary Injunction.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 3, 2018**

s/ MICHAEL J. REAGAN
**Chief Judge**
**U.S. District Court**